BOWERS v VANDERMEULEN-BOWERS

Docket No. 274377. Submitted February 13, 2008, at Lansing. Decided March 25, 2008, at 9:00 a.m. Leave to appeal denied, 481 Mich 908.

Robert E. Bowers obtained a divorce from Jennifer K. VanderMeulen-Bowers in the Mecosta Circuit Court, which awarded the parties joint legal custody of their son but awarded physical custody solely to the plaintiff. When the divorce judgment was entered, the plaintiff resided in Big Rapids and the defendant resided in Grand Rapids. After the plaintiff proposed to move with the child to a residence near Byron, the defendant filed an ex parte motion for a temporary restraining order prohibiting the plaintiff from moving the child away from his Big Rapids residence and from Hillcrest Elementary School. The court, LaVail E. Hull, J., granted the motion. However, after conducting a hearing at which it determined that the proposed new residence would be less than 100 radial miles from the plaintiff's residence in Big Rapids, as measured on a map with a ruler, and that the proposed move would not be barred by the 100-mile limit imposed by MCL 722.31(1) on unilateral changes of a legal residence of a child who is the subject of a custody order, the court dissolved the temporary restraining order. The defendant appealed.

The Court of Appeals *held*:

1. The 100-mile limit imposed by MCL 722.31(1) on a change of a child's legal residence without the consent of the court that awarded custody or the agreement of the divorced parents is properly measured in radial miles, i.e., the distance between two points as measured along a straight line. In this case involving joint legal custody and two legal residences for the child, the circuit court properly rejected the defendant's contention that the distance between the current residence in Big Rapids and the proposed new residence near Byron should be measured in road miles. In the absence of any evidence that the map used for determining the distance between the current residence and the proposed residence was inaccurate or otherwise of insufficient scale for an accurate measurement, the circuit court's finding regarding the distance at issue was not against the great weight of the evidence.

2. Parents who have joint legal custody of their child share decision-making authority with respect to important decisions affecting the welfare of the child. In this case, because a decision on the child's school placement is an important decision affecting the child's welfare, both the plaintiff and the defendant must agree on school placement. However, in view of their disagreement, the circuit court must decide the matter of school placement according to what is in the child's best interest. The circuit court abused its discretion in not modifying the temporary restraining order to permit the change of legal residence while maintaining the prohibition on a change in schools pending a resolution of that issue. On remand, the circuit court must conduct a hearing on whether the change in schools would be in the child's best interest.

3. The proceeding on remand need not be conducted by a different judge. Contrary to the defendant's claim on appeal, there is no indication that Judge Hull is biased or partial.

Reversed and remanded for further proceedings.

1. DIVORCE — CHILD CUSTODY — UNILATERAL CHANGE OF RESIDENCE — 100-MILE LIMIT.

A parent awarded physical custody of a child in a divorce judgment may not, subject to certain exceptions, change the child's legal residence to a location more than 100 miles from the child's legal residence at the time of the divorce; such distance is properly measured in radial miles, i.e., the distance between the original residence and the new residence as measured along a straight line (MCL 722.31[1]).

2. DIVORCE — CHILD CUSTODY — SCHOOL PLACEMENT.

Parents who have joint legal custody of their child share decision-making authority with respect to important decisions affecting the welfare of the child; if they cannot agree on an important decision, such as a change in schools, the court that awarded custody must decide the matter according to what is in the child's best interest (MCL 722.26a[7][b]).

*Susan Hart* for the plaintiff.

*Joseph H. Doele* for the defendant.

Before: WILDER, P.J., SAAD, C.J., and SMOLENSKI, J.

PER CURIAM. Jennifer VanderMeulen-Bowers appeals by leave granted the trial court's order vacating a temporary restraining order, which had prohibited Robert E. Bowers from removing the parties' son Calin from enrollment at Hillcrest Elementary School and from moving Calin's residence by more than 100 miles. At a hearing held two days after it had entered the restraining order, the trial court found that Robert's proposed change in legal residence would not exceed the 100-mile limit imposed by MCL 722.31. Because the change in legal residence would not exceed the 100-mile limit, the trial court determined that Robert did not need permission to make the move and vacated the restraining order. The trial court did not address Jennifer's disagreement with the proposed change in schools. We conclude that the trial court properly determined that the 100-mile limitation imposed by MCL 722.31 refers to radial miles rather than road miles,[1] and did not err when it found that the distance between Robert's current residence and his proposed residence was less than 100 miles. However, because we conclude that the trial court prematurely vacated the restraining order before resolving the parties' dispute over the change in schools, we reverse the trial court's decision to vacate the restraining order, and remand for a hearing to address whether the change in schools is in Calin's best interest.

### I. FACTS AND PROCEDURAL HISTORY

Robert and Jennifer married in 1999. A year later, Jennifer gave birth to Calin, who was their only child.

---

[1] As used in this opinion, "road miles" refers to the distance between two points along the shortest route of public travel. "Radial miles" refers to the distance between two points as measured along a straight line. See *Lash v Traverse City*, 479 Mich 180, 183 n 1; 735 NW2d 628 (2007).

In 2004 Robert and Jennifer divorced. The judgment of divorce provided for joint legal custody of Calin, but awarded sole physical custody to Robert. The judgment of divorce provided Jennifer with "reasonable and liberal parenting time." At the time of the divorce, Robert lived in Big Rapids and Jennifer lived in Grand Rapids.[2]

In August 2006, Robert moved for sole legal custody of Calin on the ground that Jennifer refused to cooperate with plaintiff on medical decisions, interfered with Calin's education, and refused to discuss Robert's possible move to a new residence.

In October 2006, Jennifer moved ex parte for a temporary restraining order to prevent Robert from removing Calin from Hillcrest Elementary School and from moving Calin's residence to Byron. The trial court granted the motion and entered the restraining order on October 25, 2006. The trial court scheduled a hearing on the merits of Jennifer's motion for October 27, 2006.

At the hearing, the trial court stated that it had entered the restraining order on the basis of Jennifer's representation that Calin's new residence would be more than 100 miles from Big Rapids, but had since determined that there was a question of fact concerning whether Byron was more than 100 miles from Big Rapids. The trial court indicated that the hearing would be limited to determining the distance between the proposed new residence and Big Rapids.

Thereafter, Robert testified about his current residence and his intention to move to a location near the village of Byron. On cross-examination, Robert testified that he calculated the distance between his current residence and the proposed residence near Byron by

---

[2] All the locations at issue are in Michigan.

measuring the distance between the two locations along a straight line using a ruler and a map. After Jennifer's counsel began to question Robert about the road miles between the two locations, the trial court interrupted:

> I believe [Jennifer's counsel's] position in this matter, is that the hundred miles should be calculated by using Map Quest or a map, and utilizing the route that [] would commonly be traveled or the shortest distance that would be traveled in an automobile. Understanding that his position is that between two points in Michigan, there is no such thing as a straight line in the sense that if you're traveling, the distance would be according to how you would normally drive a car.

Jennifer's counsel confirmed that this was her position, given the legislative history of MCL 722.31.

The trial court then summarized Robert's position:

> And [Robert's counsel's] position, I think is reflecting, likely a ruling that I have made in other cases in this county, wherein I've indicated that we simply take a ruler to a map and measure. Now, that's not a court rule . . . that is a ruling I have made in similar cases.

Following the summation of the parties' positions on how the distance should be calculated, Jennifer's counsel noted that, where parties with joint legal custody of a child disagree about a change in school districts, the disagreement must be resolved by a trial court before the change can occur. For that reason, Jennifer's counsel argued that, even if the court were to conclude that the move was within the 100-mile limit, the court should bar Robert's move pending a hearing to determine whether the change in residence was in Calin's best interest.

After this discussion, the trial court determined that the proper method for calculating the distance between the current legal residence and the proposed residence

was to measure the distance in a straight line. Using this method, the court had the parties measure the distance on a map. The measurement showed that the distance between the two locations was less than 100 miles. Because the move was within the 100-mile limit set by MCL 722.31, the trial court elected to vacate the restraining order. The court also stated that it would not resolve the disagreement over the change in schools. But it did acknowledge that if the parties were unable to agree on the change, they could return and seek guidance.

On the same day as the hearing, the trial court entered an order setting aside the restraining order of October 25, 2006.

This appeal followed.

## II. THE 100-MILE LIMIT UNDER MCL 722.31

Jennifer first argues that the trial court erred when it used radial miles to calculate the distance between Robert's Big Rapids residence and the proposed residence near Byron. Jennifer contends that, under MCL 722.31(1), the trial court must calculate the distance using road miles. We disagree.

This Court reviews de novo questions of statutory interpretation. *State Farm Fire & Cas Co v Corby Energy Services, Inc*, 271 Mich App 480, 483; 722 NW2d 906 (2006). "The goal of statutory interpretation is to give effect to the Legislature's intent as expressed in the statutory language." *Id.* In examining the language of a statute, this Court will normally give the words used in the statute their plain and ordinary meaning. *Wolfe-Haddad Estate v Oakland Co*, 272 Mich App 323, 325; 725 NW2d 80 (2006). If the statute is unambiguous, it must be enforced as written. *Id.* at 324.

In the present case, the judgment of divorce gave Robert and Jennifer joint legal custody over Calin. As a result, Calin has a legal residence with each parent. MCL 722.31(1). And neither Robert nor Jennifer may change "a legal residence" to a location that is more than 100 miles from "the child's legal residence at the time of the commencement of the action" in which the court entered the order governing custody, see MCL 722.31(1), without first obtaining permission from the court or consent from the other party, MCL 722.31(2).[3] Therefore, if the proposed residence near Byron is more than 100 miles from Calin's legal residence in Big Rapids, Robert could not make the change without first obtaining Jennifer's consent or permission from the court.

Using radial miles, the trial court found that the distance between the proposed new residence with Robert and the current legal residence was less than 100 miles. In order to determine whether the trial court properly calculated the distance between the two residences, we must determine the meaning of the term "100 miles," as used in MCL 722.31(1). Although no court has examined the meaning of this term, in *Lash v Traverse City*, 479 Mich 180; 735 NW2d 628 (2007), our Supreme Court examined an analogous provision found in MCL 15.602.

In *Lash*, our Supreme Court examined the meaning of the term "20 miles," as used in MCL 15.602. On appeal, the defendant argued that the term "20 miles" was ambiguous because it could be measured in road

---

[3] We note that the judgment of divorce did not contain an agreement regarding a change in residence. Rather, the judgment of divorce only contained the language required by MCR 3.211(C). Hence, the exception stated in MCL 722.31(5) does not apply. Likewise, the exceptions stated under MCL 722.31(3) do not apply to the facts of this case.

miles or radial miles. *Id.* at 188. The defendant further argued that this ambiguity should be resolved by looking to the purpose of the statute, which defendant argued was to ensure that travel times were not too long. *Id.* Our Supreme Court rejected the notion that the term "20 miles" was ambiguous:

> As an initial matter, the plain meaning of the word "mile" is a measurement of a distance totaling 5,280 feet. Nothing in the ordinary definition of the word indicates that this distance is to be measured along available routes of public travel. Certainly, had the Legislature desired that the permissible residency restriction be measured in "road miles" or along roadways it surely could have said so. We presume that the Legislature intended the common meaning of the words used in the statute, and we may not substitute alternative language for that used by the Legislature. Because inserting the word "road" before "miles" in the statute subverts the plain language of the statute, defendant's preferred interpretation fails. [*Id.* at 188-189.]

After rejecting the defendant's argument on the basis of the plain meaning of "20 miles," our Supreme Court went on to note that this interpretation of "20 miles" was consistent with the context and purpose of the statute. *Id.* at 189-190. Nevertheless, it is clear that the Supreme Court expressly concluded that "20 miles" does not mean "20 road miles." For the same reasons, we conclude that the term "100 miles," as used in MCL 722.31(1), does not mean "100 road miles." Rather, the 100 miles must be measured using radial miles.

Furthermore, although Jennifer clearly disagrees with the trial court's use of a map and a ruler to determine the distance between the two residences, we do not agree that this method for calculating the distance is inherently suspect. The use of a map and a ruler is but one of many possible ways for determining the distance between two points. And Jennifer has not

presented any evidence that the map used was inaccurate or otherwise of insufficient scale to make an accurate measurement. She also has not alleged that the actual measurement was inaccurately calculated beyond her argument that the distance should have been measured using road miles rather than radial miles.[4] Therefore, we cannot conclude that the trial court's finding was against the great weight of the evidence. MCL 722.28; *Grew v Knox*, 265 Mich App 333, 339; 694 NW2d 772 (2005).

The trial court did not err when it concluded that MCL 722.31(1) did not bar Robert's proposed move.

### III. CHANGE IN SCHOOL DISTRICTS

Jennifer next argues that the trial court abused its discretion when it vacated the temporary restraining order of October 25 without first conducting a hearing to determine whether Robert's proposed change in school districts was in Calin's best interest. We agree.

A trial court has discretion to vacate or modify a previously entered temporary restraining order. MCR 2.604(A). A trial court abuses its discretion when it selects an outcome that is not within the range of reasonable and principled outcomes. *Borowsky v Borowsky*, 273 Mich App 666, 672; 733 NW2d 71 (2007).

Although Robert has sole physical custody of Calin, Robert shares joint legal custody of Calin with Jennifer. When parents have joint legal custody of a child, the "parents shall share decision-making authority as to

---

[4] We note that the distance to be measured under MCL 722.31(1) is the distance between the actual current residence and the actual proposed residence; it is not the distance between the centers of the two nearest municipalities. Nevertheless, unless a finding based on an erroneous measurement is against the great weight of the evidence, it will not warrant reversal. MCL 722.28.

the important decisions affecting the welfare of the child." MCL 722.26a(7)(b); *Lombardo v Lombardo*, 202 Mich App 151, 157; 507 NW2d 788 (1993). Because Calin's placement in a particular school district is an important decision affecting his welfare, both Robert and Jennifer must agree on that decision. *Lombardo, supra* at 157-159. If they are unable to agree, the trial court must resolve the dispute according to Calin's best interest. *Id.* at 159.

In the present case, Jennifer's motion for a temporary restraining order clearly stated that she also wanted the court to enjoin Robert from changing Calin's school district without first submitting the matter to the court to determine whether the change was in Calin's best interests. Further, Jennifer's counsel brought this same matter to the court's attention during the October 27 hearing. Although Jennifer had not yet moved for a hearing on the change, in light of the pleadings and statements at the October 27 hearing, the court was clearly aware of Jennifer's disagreement with the change in school districts and also understood that it would likely have to resolve the dispute. Nevertheless, the court still determined that it would be appropriate to vacate the entire temporary restraining order—including the provision barring a change in school districts. The court came to this decision on the sole basis of its conclusion that Robert's move was not barred under MCL 722.31(1). However, the fact that Robert could properly move Calin's legal residence does not relieve a trial court of its duty to resolve disputes regarding important decisions affecting the welfare of a child according to the best interests of the child. See, e.g., *Grew, supra* at 336-338 (noting that, even after a determination regarding a parent's decision to move under MCL 722.31, a court may not make a change in custodial arrangements without conducting a best-

interest hearing). By vacating the temporary restraining order, the court implicitly authorized Robert to make the change in school districts—even if on a temporary basis—without examining whether that change was in Calin's best interest. This decision did not fall within the range of reasonable and principled outcomes. The court should have modified the temporary restraining order to permit Robert's move while maintaining the prohibition on the change in schools pending resolution of the dispute. For this reason, we reverse the court's decision to vacate the temporary restraining order and remand for a hearing on whether the change in school districts is in Calin's best interest.

### IV. JUDICIAL BIAS

Finally, Jennifer argues that the trial court is biased and asks this Court to remand this case to a different judge. After careful review of the record, we find no indication that the trial court was biased or partial. See *Cain v Dep't of Corrections*, 451 Mich 470; 548 NW2d 210 (1996). Therefore, we decline to remand this matter to a different judge.

### V. CONCLUSION

We reverse the trial court's October 27, 2006, decision and order vacating the temporary restraining order of October 25, 2006, and remand this matter to the court for a hearing on whether the proposed change in school districts is in Calin's best interest.

Reversed and remanded for further proceedings. We do not retain jurisdiction.