# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of BONNIE J. DECOSTE.

---

MARK A. DECOSTE, Personal Representative of
the Estate of BONNIE J. DECOSTE,

        Appellant.

FOR PUBLICATION
September 20, 2016
9:10 a.m.

No. 327990
Jackson Probate Court
LC No. 13-000321-DE

---

*In re* Estate of MICHAEL JOHN FLETCHER.

---

GLORIA KAY DOTY, Personal Representative of
the Estate of MICHAEL JOHN FLETCHER,

        Appellant.

No. 327993
Jackson Probate Court
LC No. 13-000172-DE

---

Before: JANSEN, P.J., and K. F. KELLY and O'BRIEN, JJ.

PER CURIAM.

In these consolidated appeals, appellants appeal as of right the probate court orders denying waivers of the probate inventory fee imposed under MCL 600.871. We affirm and remand for further proceedings consistent with this opinion.

## I. FACTS

The sole issue presented in these consolidated appeals is whether the probate court must waive or suspend the inventory fee assessed during probate of an estate when the personal

-1-

representative is indigent or receives public assistance. The inventory for each estate at issue in this case reflects that the estate contains only one asset—the decedent's home. Both appellants requested a waiver or suspension of the inventory fee on the basis that appellants receive public assistance.

## A. DECOSTE ESTATE

Appellant Mark DeCoste (DeCoste) lived with his mother, Bonnie DeCoste (Bonnie), in the house that is the sole asset listed on the inventory of the estate. DeCoste inherited the house when Bonnie died in 2013. He attempted to file an application for informal probate and appointment of a personal representative after her death, but he could not afford the filing fee. DeCoste also filed an application for a waiver or suspension of the filing fee. DeCoste's waiver of the filing fee was denied, and the word "POLICY" was written next to the denial box on the form.

DeCoste moved for reconsideration, asserting that he had no means to pay the fees involved in the case and the house could not be liquidated until after probate. He argued that without the means to pay the filing fee and other fees, probate could not commence. The probate court refused to grant the waiver, stating during the hearing on the motion for reconsideration, "Mr. DeCoste is indigent. However, the estate itself is not indigent, and I'm unaware of any statute or any case law that would indicate that if there are assets in the estate that fees should be waived based on the financial situation of the proposed heir." The court explained that the estate contained assets, and DeCoste was the sole heir. The court reasoned:

> So he's not indigent. He may not have cash available to him, but he's anticipating receipt of a residence that he's lived in virtually what, the past 10, 12 years?
>
> * * *
>
> With no mortgage payment. So I just can't see that the filing fee rules that are in place as they relate to estates are special as they relate to this circumstance because there are no liquid assets.
>
> If I were to follow your thought process, we, for example, could have a piece of real estate that is worth a million dollars, but the estate potentially wouldn't be able to be opened if I didn't waive the filing fee, assuming the heir doesn't have the money to pay the filing fee.
>
> A lot of our estates could fall under that circumstance, and I don't believe that this is an appropriate application.

The probate court entered an order denying the motion to order the suspension of the filing fee and closed the case.

After his motion was denied, DeCoste appealed in this Court. This Court reversed, stating that the probate court had "impermissibly read an exception into [MCR 2.002(C)]." *In re DeCoste Estate*, unpublished opinion per curiam of the Court of Appeals, issued November 6,

2014 (Docket No. 316896), p 2. This Court added that the proper procedure would have been to temporarily suspend the fee, but then require DeCoste to pay the fee when the reason for the suspension disappeared. *Id*.

On remand, the probate court granted DeCoste's fee waiver because he was receiving public assistance, and DeCoste was allowed to file the application for informal probate. DeCoste was appointed as personal representative, and the letters of authority noted, "You are authorized to perform all acts authorized by law unless exceptions are specified below." No exceptions were specified. The letters of authority also listed specific duties of the personal representative, including the duty to complete the administration of the estate and the duty to file an inventory of the assets of the estate within 91 days of the date the letters of authority were issued or as otherwise ordered by the court. DeCoste filed the inventory, which showed a single asset of real estate valued at $56,200. DeCoste then filed a motion for waiver or suspension of fees and costs. The probate court denied the motion. The order stated that "[t]he application is denied . . . with respect to the inventory fee. Adequate funds exist in the estate to pay the fee."

The probate court subsequently entered a supplemental order denying the waiver of the inventory fee, in which the court stated, "Due to questions about this matter raised through the State Court Administrator's Office, this Court desires to more fully explain the reasoning for that denial." The court noted that under MCL 600.880d, the inventory fee required by MCL 600.871 is waived or suspended "upon presentation of an affidavit of indigency or inability to pay." The court then turned to MCR 2.002(C) and reasoned that the inventory fee is not a fee " 'as to that party' " as contemplated in MCR 2.002(C) because the inventory fee is not chargeable to any particular party, but is instead chargeable directly to the estate. The court reasoned that the inventory fee is an expense of administration of the decedent's estate and the issue whether a personal representative is indigent or receiving public assistance is not material to the inventory fee. The court concluded that because the estate has $56,200 in assets, a waiver of the inventory fee is not appropriate.

B. FLETCHER ESTATE

Appellant Gloria Doty (Doty) filed a petition in December 2014, after this Court issued the opinion in *DeCoste*, and she attached a fee-waiver request, which the probate court granted. The decedent died in 1997, and he devised his house to Doty in his will.[1] Doty was appointed personal representative. The letters of authority noted, "You are authorized to perform all acts authorized by law unless exceptions are specified below," and no exceptions were specified. The letters of authority also listed specific duties of the personal representative, including the duty to complete the administration of the estate and the duty to file an inventory of the assets of the estate within 91 days of the date the letters of authority were issued or as otherwise ordered by

---

[1] The decedent appointed his mother as the personal representative of his estate in his will. However, there is no indication that the named personal representative took any action with regard to the estate. After Doty initiated probate, all of the interested parties agreed to appoint her as personal representative.

the court. When Doty filed the inventory, which reflected that the only asset in the estate was a home worth $64,242, she attached another waiver request, but the probate court denied waiver request. The court stated, "The application is denied . . . with respect to the inventory fee. Adequate funds exist in the estate to pay the fee." The probate court issued a supplemental order nearly identical to the one issued with regard to the DeCoste estate.

## II. STANDARD OF REVIEW

"In general, an appeal from a probate court decision is on the record, not de novo." *In re Nale Estate*, 290 Mich App 704, 706; 803 NW2d 907 (2010). However, we review de novo questions of law, including issues of statutory construction. *Id*. We similarly review de novo the lower court's interpretation and application of a court rule. *In re Leete Estate*, 290 Mich App 647, 655; 803 NW2d 889 (2010).

## III. ANALYSIS

Appellants contend that the probate court erred when it refused to waive the inventory fee because appellants receive public benefits. We disagree.

Resolution of the issue presented in this case requires the interpretation of several statutes. We consider the plain language of the statute and enforce the clear and unambiguous language as written. See *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013).

> The judiciary's objective when interpreting a statute is to discern and give effect to the intent of the Legislature. First, the court examines the most reliable evidence of the Legislature's intent, the language of the statute itself. When construing statutory language, [the court] must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined. Effect must be given to every word, phrase, and clause in a statute, and the court must avoid a construction that would render part of the statute surplusage or nugatory. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. [*In re Jajuga Estate*, 312 Mich App 706, 712; 881 NW2d 487 (2015) (quotation marks and citation omitted; alteration in original).]

This case also involves the interpretation of MCR 2.002. We analyze court rules using the same rules of construction that are used to analyze statutes. *Leete Estate*, 290 Mich App at 655. "Our goal in interpreting the meaning of a court rule is to give effect to the intent of the drafters." *Id*. We first examine the language of the court rule. *Id*. "The drafters are assumed to have intended the effect of the language plainly expressed, and we must give every word its plain and ordinary meaning." *Id*. at 655-656. If the language is plain and unambiguous, we apply the language as it is written in the court rule. *Id*. at 656. "In such instances, judicial construction is neither necessary nor permitted." *Id*.

We conclude that waiver or suspension of the inventory fee is inappropriate because each estate contains sufficient assets to pay the fee. We assume for the purposes of this appeal that appellants receive public assistance and are indigent. Nevertheless, we conclude that appellants'

ability to pay the inventory fee is not dispositive on the issue of waiver or suspension of the fee. The requirement that a personal representative submit an inventory and the payment of the inventory fee is governed by both statute and court rule. MCL 700.3706 provides:

(1) Within 91 days after appointment or other time specified by court rule, a personal representative, who is not a special personal representative or a successor to another representative who has previously discharged this duty, shall prepare an inventory of property owned by the decedent at the time of death, listing it with reasonable detail, and indicating as to each listed item, its fair market value as of the date of the decedent's death, and the type and amount of an encumbrance that may exist with reference to each listed item.

(2) The personal representative shall send a copy of the inventory to all presumptive distributees and to all other interested persons who request it, and may also file the original of the inventory with the court. The personal representative shall submit to the court on a timely basis information necessary to calculate the probate inventory fee.

Similarly, MCR 5.307(A) provides:

Within 91 days of the date of the letters of authority, the personal representative must submit to the court the information necessary for computation of the probate inventory fee. The inventory fee must be paid no later than the filing of the petition for an order of complete estate settlement under MCL 700.3952, the petition for settlement order under MCL 700.3953, or the sworn statement under MCL 700.3954, or one year after appointment, whichever is earlier.

With regard to the calculation of the probate fee, MCL 600.871 provides:

(1) In all decedents' estates in which proceedings are instituted for probate, the probate court shall charge and collect the following fees as an expense of administration on the value of all assets, as of the date of death of the decedent, as follows:

(a) In an estate of value of less than $1,000.00, $5.00 plus 1% of the amount over $500.00.

(b) In an estate of value of $1,000.00 or more, but less than $3,000.00, $25.00.

(c) In an estate of value of $3,000.00 or more but less than $10,000.00, $25.00 plus $\frac{5}{8}$ of 1% of the amount over $3,000.00.

(d) In an estate of value of $10,000.00 or more but less than $25,000.00, $68.75 plus $\frac{1}{2}$ of 1% of the amount over $10,000.00.

(e) In an estate of value of $25,000.00 but less than $50,000.00, $143.75 plus ⅜ of 1% of the amount over $25,000.00.

(f) In an estate of value of $50,000.00 but less than $100,000.00, $237.50 plus ¼ of 1% of the amount over $50,000.00.

(g) In an estate of value of $100,000.00 to $500,000.00, $362.50 plus ⅛ of 1% of the amount over $100,000.00.

(h) For each additional $100,000.00 value, or larger fraction thereof, over $500,000.00, $62.50.

(i) For each additional $100,000.00 value, or larger fraction thereof, over $1,000,000.00, $31.25.

(2) Until December 31, 2017, in calculating a fee under subsection (1), if real property that is included in the estate is encumbered by or used as security for an indebtedness, the amount of the indebtedness shall be deducted from the value of the real property.

(3) The fees in subsection (1), rounded to the whole dollar, are due and payable to the probate court on or before the closing of the estate or within 1 year after the commencement of probate proceedings, whichever occurs first. A final accounting shall not be accepted by the probate court until the fees are paid in full and shown as part of the final accounting. An official receipt shall be issued to the payer when the fees are collected.

(4) By March 31, 2015 and each March 31 until March 31 2018, the probate court shall do all of the following:

(a) Calculate the value of all assets in each estate in the immediately preceding calendar year.

(b) If real property that is included in the estate is encumbered by or used as security for an indebtedness, subtract from the result of the calculation in subdivision (a) the total amount of the indebtedness.

(c) Calculate the total amount of all fees collected under subsection (1) in the immediately preceding calendar year.

(d) Submit to the state court administrative office the results under subdivisions (a), (b), and (c).

The probate court correctly concluded that waiver or suspension of the inventory fee was not appropriate because the *estates* contain sufficient assets to pay the inventory fee. The language of the MCL 600.871(1) supports this conclusion. MCL 600.871(1) provides that the inventory fee is calculated "as an expense of administration on the value of all assets." Thus, the inventory fee is considered an expense of administration of the estate, rather than an expense that

-6-

the personal representative is required to pay from his or her own funds. Additionally, the inventory fee is determined based on the value of the assets in the estate, rather than the ability of the personal representative to pay the fee. Therefore, the plain language of the statute governing the inventory fee supports the probate court's conclusion. See MCL 600.871(1).

In addition, the reason for the inventory fee indicates that waiver or suspension of the fee is not warranted in this circumstance. "[T]he 'services required from a court in probate proceedings are, in the main, in proportion to the appraised value of the estate; that the more valuable the estate, the greater the time required of the court in the probate thereof, and consequently the respective higher statutory fee scheduled.' " *Wolfe-Haddad Estate v Oakland Co*, 272 Mich App 323, 328; 725 NW2d 80 (2006) (citation omitted). "Thus, the purpose of the statute is to assess a fee that approximately corresponds to the amount of work that the probate court will have to perform to administer the estate." *Id*. The work that the probate court must perform to administer the estate is tied to the value of the estate. Therefore, the value of the estate, rather than the ability of the personal representative to pay the fee from his or her personal funds, dictates the amount of the inventory fee. The fact that appellants are unable to pay the inventory fee from their personal funds is irrelevant because the estates contain sufficient assets to pay the inventory fee. Accordingly, we conclude that the reason for the inventory fee indicates that the assets in the estate control whether a waiver or suspension is appropriate.

Appellants contend that MCL 600.880d and MCR 2.002 require the waiver or suspension of the inventory fee. MCL 600.880d provides, "A judge of probate shall order that the payment of any fee required under this chapter be waived or suspended, in whole or in part, upon a showing by affidavit of indigency or inability to pay." However, MCL 600.880d is not dispositive in this case because the statute does not specify which person or entity is responsible for payment of the inventory fee. In this case, both estates were able to pay the inventory fee. The DeCoste estate contained a home worth $56,200, and the Fletcher estate contained a home worth $64,242. Thus, both estates contained assets that well exceeded the amount of the inventory fee, which was calculated based on the assets in the estate. Therefore, because MCL 600.880d is silent regarding which person or entity is liable to pay the inventory fee, the waiver or suspension of the inventory fee was not required under MCL 600.880d.

MCR 2.002 also does not require the waiver of the inventory fee. MCR 2.002 governs the waiver or suspension of fees and costs. MCR 2.002(A)(2) provides, "Except as provided in subrule (F),[2] for the purpose of this rule 'fees and costs' applies *only to filing fees* required by law." (Emphasis added.) MCR 2.002(C) provides, "If a party shows by ex parte affidavit or otherwise that he or she is receiving any form of public assistance, the payment of fees and costs *as to that party* shall be suspended." (Emphasis added.) Similarly, MCR 2.002(D) provides, "If a party shows by ex parte affidavit or otherwise that he or she is unable because of indigency to pay fees and costs, the court shall order those fees and costs either waived or suspended until the conclusion of the litigation."

---

[2] MCR 2.002(F) is not relevant to the issues presented in this case.

The language of MCR 2.002(A)(2) clarifies that the phrase "fees and costs" only applies to filing fees required by law. Therefore, MCR 2.002 does not apply in this context because the inventory fee is not a filing fee, but rather, an expense of administration of the estate. See MCL 600.871(1); MCR 5.307(A). Thus, while appellants were entitled to a waiver of the initial filing fees in this case under MCR 2.002, the estates are not entitled to a waiver or suspension of the inventory fee under MCR 2.002. Furthermore, as discussed above, both estates contained sufficient assets to pay the inventory fee. Thus, even assuming the court rule applied, neither estate was entitled to waiver or suspension under MCR 2.002(C) and (D) because the estates were not receiving any form of public assistance and were not indigent, which is required for waiver or suspension under the court rule. See MCR 2.002(C) and (D).

We also note that the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, requires appellants to pay the inventory fee as the first claim or allowance from the assets of the estate. MCL 700.3805(1) governs the priority of claims and allowances and provides, in part:

> If the applicable *estate property is insufficient* to pay all claims and allowances in full, the personal representative shall make payment in the following order of priority:
>
> (a) Costs and expenses of administration. [Emphasis added.]

MCL 700.3805(1) indicates that the personal representative is the actor making the payment for the costs and expenses of administration. However, the statute clarifies that the claims are paid *from the estate property*, rather than from the personal representative's property. The statute further provides that the costs and expenses of administration take first priority with regard to all claims and allowances. Thus, it is proper to look at the assets in the estate in determining whether sufficient assets exist to pay the claims and allowances. In this case, there was sufficient property in the estate to pay the inventory fee, which is considered part of the costs and expenses of administration. Regardless of whether appellants paid the inventory fee out of pocket and were later reimbursed, or whether appellants liquidated the assets of the estate and paid the fee directly from the estate, there was sufficient property in the estate to pay the inventory fee.

EPIC also clarifies that appellants had the ability to liquidate the assets in the estate in order to pay the costs and expenses of administration. MCL 700.3701 provides that the personal representative's powers and duties to the estate commence when he or she is appointed. The personal representative has control over the title and possession of the decedent's property. MCL 700.3711 clarifies, "Until termination of the appointment, a personal representative has the same power over the title to estate property that an absolute owner would have, in trust, however, for the benefit of creditors or others interested in the estate. This power may be exercised without notice, hearing, or court order." MCL 700.3709 adds that the personal representative has the right to take possession or control of the decedent's property if necessary for the purposes of administration of the estate. Thus, appellants had the ability to liquidate the property in the estates in order to pay the inventory fee. Indeed, appellants' fiduciary duty to the estate required them to do so. MCL 700.3703(1) provides that

-8-

> [a] personal representative is a fiduciary who shall observe the standard of care applicable to a trustee as described by [MCL700.7803]. A personal representative is under a duty to settle and distribute the decedent's estate in accordance with the terms of a probated and effective will and this act, and as expeditiously and efficiently as is consistent with the best interests of the estate. The personal representative shall use the authority conferred by this act, the terms of the will, if any, and an order in a proceeding to which the personal representative is party for the best interests of claimants whose claims have been allowed and of successors to the estate.

Appellants were required to ensure that the inventory fee was paid because appellants had the duty to settle and distribute the estate in accordance with EPIC, which requires the payment of the costs and expenses of administration. See MCL 700.3805(1). While appellants, as devisees, may not have wished to liquidate the assets in the estates, their fiduciary duty as personal representatives was to pay the costs and expenses of administration. See *id*. Therefore, appellants were not entitled to a waiver or suspension of payment of the inventory fee because each estate contained sufficient assets to pay the fee, and appellants had the ability to liquidate the assets in order to pay the fee.[3]

Affirmed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien

---

[3] Appellants rely, in large part, on this Court's unpublished opinion in *O'Brien v O'Brien*, unpublished opinion per curiam of the Court of Appeals, issued September 11, 2007 (Docket No. 271625). However, *O'Brien* is distinguishable from the instant case because the issue in *O'Brien* involved the costs and fees required to enter a judgment of divorce, as opposed to the inventory fee assessed to an estate. See *id*. at 1. In *O'Brien*, the trial court required the plaintiff to pay fees and costs as a prerequisite to entry of the judgment of divorce. *Id*. In contrast, the probate court required the two *estates* to pay the inventory fee in these consolidated cases. Thus, *O'Brien* does not apply in the context of an inventory fee. Further, *O'Brien* is an unpublished opinion and, therefore, is not binding on this Court under the rule of stare decisis. See MCR 7.215(C)(1); *In re Gerald L Pollack Trust*, 309 Mich App 125, 142 n 3; 867 NW2d 884 (2015).